IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOY LYNN TIPPING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:15-cv-2951-BN |
| | § | |
| ANCIZAR MARTIN and ART BY | § | |
| ANCIZAR, INC., | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

In this case removed from Texas state court, Defendants Ancizar Marin ("Marin") and Art by Ancizar, Inc. ("Art by Ancizar"; collectively, "Defendants") have filed a Motion to Dismiss or, in the Alternative, Motion for More Definite Statement, seeking dismissal of all of Plaintiff Joy Lynn Tipping's claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, an order under Federal Rule of Civil Procedure 12(e) requiring Plaintiff to file a more definite statement. *See* Dkt. No. 4. Plaintiff has responded, *see* Dkt. No. 6, Defendants have replied, *see* Dkt. No. 7, and Plaintiff has filed a sur-reply, *see* Dkt. No. 8.

As to the sur-reply, the Court notes that, once a motion is filed, the Local Civil Rules permit a response by the nonmovant and a reply by the movant. See N.D. TEX. L. CIV. R. 7.1. The movant therefore is entitled to file the last pleading. Sur-replies, and any other filing that serves the purpose or has the effect of a sur-reply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last

word on a matter. Filing a sur-reply requires leave of court and a showing of good cause or exceptional circumstances. Consequently, a party must not seek leave to file a sur-reply as a routine matter. Moreover, as Plaintiff did not seek leave, the Court has not considered it in deciding Defendants' motion.

For the reasons and to the extent explained below, the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss or, in the Alternative, Motion for More Definite Statement [Dkt. No. 4].

## Background

Plaintiff alleges that, on April 5, 2015, she was attending the Deep Ellum Arts Festival (the "Festival") in Dallas, Texas and that, at that time, she "was employed as a journalist with the Dallas Morning News" but that she "was not 'on assignment' at the time of the events giving rise to" her claims in this case. Dkt. No. 1 at 12-13 of 55.

Plaintiff alleges that Marin and Art by Ancizar "contracted with the Festival for the exhibition of sculpture pieces allegedly created by [Marin], described as '[c]ircus inspired fiberglass, volcano rock and bronze sculptures finished with automotive paints'" (the "sculpture pieces") and that "[t]he sculpture pieces were affixed to the outside of an exhibition tent assigned by the Festival to Defendants [Marin] and/or [Art by Ancizar] for exhibition to passersby." *Id.* at 13 of 55. Plaintiff alleges that "[m]any such tents were assigned to the various exhibitors at the Festival, allowing for passersby to move between the tents and view the various art works on display" and that, "[a]s with the tent assigned to Defendants, many tents assigned to other

exhibitors also had art work affixed to the outside of or displayed in front of such tents, in plain view of passersby." *Id.*

According to Plaintiff's Original Petition, "[a]s Plaintiff was passing Defendants' tent, she took photographs of the sculpture pieces affixed to the outside thereof," and, "[u]pon noticing Plaintiff taking the aforementioned photographs, [Marin] rushed out of the tent and began shouting profanities at Plaintiff, demanding that she stop taking photographs and delete the photographs she had already taken from her digital camera." *Id.* "When Plaintiff explained to [Marin] that she had a right to take photographs of the sculpture pieces he had displayed to the general public, [Marin] informed Plaintiff that the sculpture pieces were protected by copyright and that she had no right to take photographs of them without his consent," and "Plaintiff then explained to [Marin] that she was a journalist and knew the laws concerning copyright, whereupon she showed [Marin] her Dallas Morning News identification badge." *Id.* at 13-14 of 55.

Plaintiff alleges that, "[u]pon seeing Plaintiff's identification badge, [Marin] became belligerent, shouting vile, foul, and misogynistic profanities at Plaintiff, spitting in Plaintiff's face, and impugning Plaintiff's journalistic integrity and ability"; that Marin's "verbal attack of Plaintiff was heard by all within earshot, including several other exhibitors"; and that, "[w]hen [Marin] threatened to get a policeman, Plaintiff informed him she would save him the trouble and get one herself, turning from [Marin] and retreating from the area." *Id.* at 14 of 55. According to Plaintiff, "[a]s Plaintiff retreated, [Marin] pursued her, continuing his profane verbal tirade," and,

"[i]n the face of [Marin's] continued profane taunting, Plaintiff displayed her middle finger in his direction." *Id.* Marin "photographed Plaintiff's display of her middle finger in his direction as she was retreating from the area of his tent." *Id.*

Plaintiff alleges that, "[a]fter being gone for a few minutes, Plaintiff returned to the area with a police officer and a Dallas County Constable, who tried to calm" Marin and that, "[w]hen [Marin] would not calm down, the officers asked Plaintiff to remove herself from the area out of concern that a physical altercation was imminent." *Id.*

According to Plaintiff, "[w]hen Plaintiff reported for work the following morning, she was informed that [Marin] had complained to []Plaintiff's superiors about her taking photographs of the sculpture pieces and had forwarded to her superiors the photograph of Plaintiff displaying her middle finger in his direction; whereupon Plaintiff was terminated from her employment." *Id.* at 15 of 55.

Plaintiff alleges claims against Marin for negligence, assault and battery, defamation, invasion of privacy, and intentional infliction of emotional distress and alleges against Art by Ancizar alter ego liability – based on allegations that Art by Ancizar "was the alter ego of [Marin] at all material times" and "is jointly and severally liable with [Marin] for the acts and omissions complained of" – and liability under the doctrine of *respondeat superior* – based on allegations that, "[a]t all material times, [Marin] was acting in his capacity as an employee of [Art by Ancizar]," which is therefore "liable for the acts and omissions of" Marin. *Id.* at 15-18 of 55.

Plaintiff asserts that she sustained economic and actual damages as a result of the actions and/or omissions of Defendants in the form of reasonable medical care and

expenses in the past, incurred by Plaintiff for the necessary psychological care and treatment of the psychic injuries resulting from the occurrences complained of; reasonable medical care and expenses in the future that will be incurred by Plaintiff for the necessary psychological care and treatment of the psychic injuries resulting from the occurrences complained of; mental anguish and suffering in the past and in the future; loss of earnings in the past; all costs of these proceedings; and interest as provided by law. *See id.* at 19 of 55. Plaintiff also requests an award of her attorneys' fees and alleges that the acts and omissions complained of were committed knowingly, intentionally, and with malice and that she is entitled to recover exemplary damages under Texas Civil Practice and Remedies Code § 41.003(a)(2). *See id.*

### Legal Standards

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). "The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim." *Hicks v. Green Tree Servicing*, LLC, 3:13-cv-3025-L, 2014 WL 961856, at *2 (N.D. Tex. Mar. 12, 2014) (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)).

To state a claim on which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity

"to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

Plaintiff asserts that the Court should look to Texas state pleading requirements in assessing Defendants' motion to dismiss. But, "[w]hile this case originated in state court and was later removed to federal court by [Defendants], [Plaintiff's] pleadings must nevertheless conform to federal pleading requirements." *Genella v. Renaissance Media*, 115 F. App'x 650, 652-53 (5th Cir. 2004) (internal quotation marks omitted).

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response," and "[t]he motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." FED. R. CIV. P. 12(e). "A motion for a more definite statement under Rule 12(e) is available where the pleading 'is so vague or ambiguous that the party cannot reasonably prepare a response.'" *Conceal City, L.L.C. v. Looper Law Enforcement, LLC*, 917 F. Supp. 2d 611, 621 (N.D. Tex. 2013)

(quoting FED. R. CIV. P. 12(e)). "Motions for a more definite statement are generally disfavored." *Johnson v. BAE Sys. Land & Armaments, L.P.*, No. 3:12-cv-1790-D, 2012 WL 5903780, at *4 (N.D. Tex. Nov. 26, 2012) (internal quotation marks omitted). "When a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede [its] ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Id.* (internal quotation marks omitted).

## Analysis

Defendants move under Rule 12(b)(6) to dismiss Plaintiff's claims, asserting that "Plaintiff asserts claims for negligence, defamation, invasion of privacy, assault and battery, and intentional infliction of emotional distress resulting from an alleged verbal confrontation at an art festival" but that "Plaintiff's factual allegations either are insufficient to support her claims or show that she has no right to relief." Dkt. No. 4 at 1. According to Defendants, "[s]pecifically, Plaintiff's allegations conclusively show that she cannot maintain a claim for invasion of privacy and that her negligence claim is not recognized under Texas law," and Plaintiff's "allegations are insufficient to support her claims for defamation, assault and battery, and intentional infliction of emotional distress." *Id.* Defendants alternatively request that, under Rule 12(e), the Court "require Plaintiff to file a more definite statement" and, specifically, "order Plaintiff to provide specific information regarding (1) the specific statement of fact underlying her defamation claim, (2) the physical invasion underlying her invasion of

privacy claim, and (3) the factual allegations supporting a claim that [Marin] intentionally spit on her." *Id.* at 2, 6.

<u>Invasion of Privacy</u>

In support of the claim for invasion of privacy against Marin, Plaintiff alleges that Marin's "unwarranted barrage of foul, vile, profane and misogynistic insults at Plaintiff constitute an intentional intrusion on Plaintiffs solitude, seclusion, or private affairs which a reasonable person would find highly offensive" and that Marin therefore "invaded Plaintiff's privacy with his unwarranted barrage of foul, vile, profane and misogynistic insults at Plaintiff." Dkt. No. 1 at 17 of 55.

Defendants move to dismiss this claim, asserting that "[i]ntrusion on seclusion is a 'quasi-trespass tort' generally involving some sort of physical invasion of a person's property such as spying, opening private mail, wiretapping, or entering a person's residence"; that "Plaintiff does not allege a physical intrusion of any sort" but "simply alleges a verbal confrontation with a stranger in a public place that included offensive comments"; and that "[o]ffensive comments do not constitute an invasion of privacy under Texas law." Dkt. No. 4-1 at 2 (citing *Doe v. U.S.*, 83 F. Supp. 2d 833, 840 (S.D. Tex. 2000); *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1, 6 (Tex. App. – Corpus Christi 1991, no writ); *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 85 (5th Cir. 1997)). Defendants conclude that Plaintiff's allegations "show that she cannot maintain a claim for invasion of privacy against Defendants." *Id.*

Plaintiff responds that "Texas law recognizes a common-law right to privacy"; that "[t]o prove invasion of privacy, Plaintiff must establish: (1) that the Defendant

intentionally intruded, physically or otherwise, upon her solitude, seclusion, or private affairs or concerns; (2) that such intrusion would be highly offensive to a reasonable person; and (3) that she suffered injury as a result of the appellee's intrusion"; and that Plaintiff "alleged the she was attending an art festival in her individual capacity, that Defendant Marin rushed out of his tent and began shouting profanities at her, and that she suffered injury as a result of this encounter when she was terminated from her employment." Dkt. No. 6 at 2 (citations omitted; citing *Billings v. Atkinson*, 489 S.W.2d 858, 859 (Tex. 1973); *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 253 (Tex. App. – Houston [1st Dist.] 1993, writ denied); *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993); *Clayton v. Wisener*, 190 S.W.3d 685, 696 (Tex. App. – Tyler 2005, no pet.)). Plaintiff asserts that she therefore sufficiently pleaded a claim for invasion of privacy. *See id.* at 2-3.

Defendants reply that Plaintiff admits that her only factual basis for the invasion of privacy claim is Marin's rushing out of his tent and shouting profanities at her and that Plaintiff "does not contend to allege any other actions in support of her claim." Dkt. No. 7 at 2. Defendants maintain that this amounts to nothing more than offensive comments, which "do not constitute an invasion of privacy under Texas law." *Id.* at 2-3 (citing *Cornhill*, 106 F.3d at 85).

Texas law recognizes at least three types of claims for invasion of privacy: (1) intrusion on seclusion, (2) public disclosure of private facts, and (3) appropriation of name or likeness. *See Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994) (explaining that Texas recognizes these three distinct injuries under the tort of

invasion of privacy). "To establish a claim for the tort of invasion of privacy based on the public disclosure of private facts, the plaintiff must show that (1) publicity was given to matters concerning his private life; (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities; and (3) the matter publicized was not of legitimate public concern." *Lowe v. Hearst Comm'ns, Inc.*, 487 F.3d 246, 250 (5th Cir. 2007) (citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473-74 (Tex. 1995)); *accord Larson v. Hyperion Int'l Techs., L.L.C.*, 494 F. App'x 493, 496 (5th Cir. 2012) (quoting *Crumrine v. Harte-Hanks Television, Inc.*, 37 S.W.3d 124, 127 (Tex. App. – San Antonio 2001, pet. denied)). The publicity requires Plaintiff to show that information at issue "was 'communicated to the public at large,' not simply to 'a small group of persons.'" *Johnson v. Sawyer*, 47 F.3d 716, 731 (5th Cir. 1995) (quoting *Indus. Found. of the South v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 684-85 (Tex. 1976)). That is, "'[p]ublicity' requires communication to more than a small group of persons; the matter must be communicated to the public at large, such that the matter becomes one of public knowledge." *Indus. Found.*, 540 S.W.2d at 683-84.

Perhaps because Plaintiff cannot plead facts to support this publicity element and pleads no facts suggestive of a claim based on appropriation of name or likeness, Plaintiff and Defendants both point to the elements of the tort of invasion of privacy based on intrusion on seclusion. As the parties appear to agree, this type of claim requires Plaintiff to prove an intentional intrusion, physical or otherwise, upon another's solitude, seclusion, or private affairs or concerns that would be highly offensive to a reasonable person and the plaintiff suffered injury as a result of the

intrusion. *See Valenzuela*, 853 S.W.2d at 513; *Robinson v. Brannon*, 313 S.W.3d 860, 687 (Tex. App. – Houston [14th Dist.] 2010, no pet.); *Clayton*, 190 S.W.3d at 696. But "there is no intrusion where there is no legitimate expectation of privacy." *Smith v. Methodist Hosps. of Dallas*, No. 3:07-cv-1230-P, 2008 WL 5336342, at *6 (N.D. Tex. Dec. 19, 2008) (citing *Vaughn v. Drenno*, 202 S.W.3d 308, 320 (Tex. App. – Tyler 2006, no pet.)). "The invasion-of-privacy tort is typically associated with either a physical invasion of a person's property or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying." *Clayton*, 190 S.W.3d at 696 (citing cases). For this tort, "[l]iability does not turn on publication of any kind. The core of the tort of invasion of privacy is the offense of prying into the private domain of another, not the publicity that may result from such prying." *Clayton v. Richards*, 47 S.W.3d 149, 153 (Tex. App. – Texarkana 2001, pet. denied) (citation omitted).

As Defendants correctly assert, under Texas law as interpreted in a binding manner by the United States Court of Appeals for the Fifth Circuit, insulting someone in a public place – even, as Plaintiff alleges, an unwarranted barrage of foul, vile, profane and misogynistic insults – does not constitute the tort of invasion of privacy by intrusion on seclusion. *See Cornhill*, 106 F.3d at 85; *Clayton*, 190 S.W.3d at 696; *see also Soda v. Caney*, No. 05-10-00628-CV, 2012 WL 1996923, at *2 (Tex. App. – Dallas June 5, 2012, pet. filed); *cf. Dickson v. Am. Red Cross Nat'l Headquarters*, No. 3:95-cv-2391-P, 1997 WL 118415, at *11-*12 (N.D. Tex. Mar. 10, 1997).

Plaintiff's invasion of privacy claim fails to state a claim to relief that is plausible on its face, and the Court therefore grants Defendants' motion as to this claim and dismisses Plaintiff's invasion of privacy claim with prejudice.

Defamation

In support of the claim for defamation against Marin, Plaintiff alleges that Marin "made derogatory statements about Plaintiff's journalistic integrity and ability during the course of his unwarranted barrage of foul, vile, profane and misogynistic insults against Plaintiff"; that these derogatory statements "were heard by several people" and "were made with actual malice and/or were negligent, regarding the veracity thereof"; and that these derogatory statements made by Marin about Plaintiff were therefore defamatory. Dkt. No. 1 at 16-17 of 55.

Defendants move to dismiss this claim, asserting that, "[t]o bring an action for defamation, a plaintiff must show (1) the publication of *a false statement of fact* to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages" and that "Plaintiff fails to identify any specific statement of fact made by Marin, much less a false statement of fact," but rather "merely alleges that during a verbal confrontation, Marin insulted her including making some general derogatory statements about her journalistic integrity." Dkt. No. 4-1 at 3 (emphasis in original; citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)). Defendants contend that "[i]nsults, even if offensive, do not rise to the level of defamation; nor do casual remarks, pure opinions, or epithets," and that "Plaintiff has failed to identify an actionable statement by Defendants in support of her defamation

-12-

claim." *Id.* (citing *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989); *Shaw v. Palmer*, 197 S.W.3d 854, 857 (Tex. App. – Dallas 2006, pet. denied)).

In response, Plaintiff explains that "[d]efamation is generally defined as the invasion of a person's interest in his or her reputation and good name"; that "[d]efamation claims are also divided into two categories, defamation per se and defamation per quod, according to the level of proof required in order to make them actionable"; and that "[s]tatements that are defamatory per quod are actionable only upon allegation and proof of damages," "[t]hat is, before a plaintiff can recover for defamation per quod, he must carry his burden of proof as to both the defamatory nature of the statement and the amount of damages caused by the publication of that statement." Dkt. No. 6 at 3 (citing Prosser & Keeton on Torts § 111, at 771 (5th ed. 1984 & Supp. 1988); *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 580 (Tex. App. – Austin 2007, pet. denied); *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App. – Waco 2005, no pet.); *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App. – Corpus Christi 2003, no pet.); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984); *Peshak v. Greer*, 13 S.W.3d 421, 426 (Tex. App. – Corpus Christi 2000, no pet.)). Plaintiff notes that she "alleged that [Marin] made derogatory statements about her journalistic integrity which [were] heard by several people, that such statements were made with actual malice and/or were negligent and without regard for the veracity thereof, and that Plaintiffs employment was terminated as a result of this encounter." *Id.* (citations omitted). Plaintiff asserts that she therefore sufficiently pleaded a defamation claim. *See id.* at 3-4.

Plaintiff has not pleaded that Marin made any false statement of fact. *See* Dkt. No. 1. Rather, she pleaded that Marin "made derogatory statements about Plaintiff's journalistic integrity and ability" and "impugn[ed] Plaintiff's journalistic integrity and ability." *Id.* at 14, 16-17 of 55. "An essential element of defamation is that the alleged defamatory statement be a statement of fact rather than opinion." *Shaw*, 197 S.W.3d at 857. As to this essential element of a defamation claim, Plaintiff has not sufficiently pleaded factual content to allow the Court to draw the reasonable inference that Marin is liable for defamation by publicly making a false statement of fact. The Court grants Defendants' motion as to this claim, which is dismissed without prejudice to Plaintiff's repleading to allege sufficient factual content to support a defamation claim.

<u>Intentional Infliction of Emotional Distress</u>

In support of the claim for intentional infliction of emotional distress ("IIED") against Marin, Plaintiff alleges that Marin "intentionally and/or recklessly unleashed a barrage of foul, vile, profane and misogynistic insults at Plaintiff which was extreme and outrageous"; that Marin's "intentional and/or reckless barrage of foul, vile, profane and misogynistic insults at Plaintiff was calculated to goad Plaintiff into displaying her middle finger in his direction so that he could photograph said display"; that, "[i]n goading Plaintiff and photographing her display of her middle finger in his direction, [Marin] intentionally sought to get Plaintiff fired from her job"; that, "[b]y causing Plaintiff to suffer through his foul, vile, profane and misogynistic insults, [Marin] caused Plaintiff to suffer severe emotional distress"; that, "[b]y causing Plaintiff to lose her employment, [Marin] caused Plaintiff to suffer severe emotional distress"; and that

these "actions of [Marin] constitute an intentional infliction of emotional distress on Plaintiff." Dkt. No. 1 at 17-18 of 55.

Defendants move to dismiss this claim, asserting that, "[t]o bring a claim for intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe" and that "'[e]xtreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Dkt. No. 4-1 at 3-4 (internal quotation marks omitted; citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998); quoting *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004)). Defendants explain that "Plaintiff alleges that [Marin] 'unleashed a barrage of foul, vile, profane and misogynistic insults at Plaintiff which was extreme and outrageous'"; that "Plaintiff alleges this happened one time"; and that, "[u]nder Texas law, this alleged conduct is not extreme and outrageous as a matter of law," where "[l]one incidents ... are not actionable under Texas law" and "Plaintiff's allegations that Defendants intentionally sought to get Plaintiff fired cannot save her" because "the Texas Supreme Court [has] addressed a IIED claim stemming from a post-termination eviction of the plaintiff from the house where she was living, allegedly orchestrated by the defendant employer," and held that it did not meet the standard for an IIED claim. *Id.* at 4-5 (citing *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617 (Tex. 1999); *Cunningham*

*v. Richeson Mgmt Corp.*, 230 F. App'x 369, 372 (5th Cir. 2007); *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817-18 (Tex. 2005)). According to Defendants, "Plaintiff cannot maintain an action for IIED under the facts alleged." *Id.* at 5.

In response, Plaintiff notes that, to state an IIED claim, "the intended or primary consequence of the defendant's conduct must be to cause emotional distress, not physical injury," and that "a claim of intentional infliction of emotional distress will not lie if emotional distress is not the intended or a primary consequence of the defendant's conduct." Dkt. No. 6 at 4 (citing *Standard Fruit*, 985 S.W.2d at 65-66, 68; *Durckel v. St. Joseph Hosp.*, 78 S.W.3d 576, 586 (Tex. App. – Houston [14th Dist.] 2002, no pet.). Plaintiff explains that, in her Original Petition, she "alleged the she was attending an art festival, that [Marin] rushed out of his tent and began shouting profanities at her, and that she suffered emotional distress at the time of this encounter and when she was terminated from her employment." *Id.* (citations omitted). Plaintiff asserts that she therefore sufficiently pleaded an IIED claim. *See id.* at 4.

In reply, Defendants contend that, in addition to the reasons stated in its opening brief, to "which Plaintiff has offered no response," "Plaintiff's IIED claim should also be dismissed because Plaintiff failed to establish that no alternative cause of action provides her a remedy for her alleged severe emotional distress," where "[a] plaintiff can only maintain an IIED claim if he or she has no alternative cause of action for his or her alleged severe emotional distress" and where "Plaintiff has asserted numerous causes of action all based on the same underlying facts and all for the same alleged damages" and "cannot have it both ways," because "[e]ither her IIED claim goes

or she must drop her other causes of action." Dkt. No. 7 at 2 (citing *Creditwatch*, 157 S.W.3d at 816).

"The elements of intentional infliction of emotional distress are: '(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe.'" *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 16 n.3 (Tex. 2008) (quoting *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000)). To establish that the defendant acted intentionally or recklessly, the plaintiff must prove that "severe emotional distress" was "the intended consequence or primary risk" of the defendant's actions. *Vaughn v. Drennon*, 372 S.W.3d 726, 732 (Tex. App. – Tyler 2012, no pet.). "A defendant's conduct satisfies the second element only if it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Kroger Tex., L.P. v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006) (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). "Conduct that is merely insensitive or rude is not extreme and outrageous, nor are 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Kroger*, 216 S.W.3d at 796 (quoting *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)). "Meritorious claims for intentional infliction of emotional distress are relatively rare precisely because most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous." *Id.* In Texas, "[i]t is for the court to determine in the first instance whether conduct is

extreme and outrageous, and such claims are submitted to a jury only when reasonable minds may differ." *Creditwatch*, 157 S.W.3d at 817. To establish "severe emotional distress," the plaintiff must prove "distress that is so severe that no reasonable person could be expected to endure it." *GTE*, 998 S.W.2d at 618.

"But despite the danger of fictitious claims, the difficulty of measuring damages, and the indeterminacy of its proscriptions, intentional infliction of emotional distress can be an effective cause of action for egregious conduct that might otherwise go unremedied." *Kroger*, 216 S.W.3d at 796 (internal quotation marks omitted). For this reason, however, because intentional infliction of emotional distress is a "gap-filler" tort, a plaintiff, in addition to establishing the essential elements set forth above, must also establish that there are no alternative causes of action that would provide a remedy for the severe emotional distress caused by the defendant's conduct. *See id.*; *Creditwatch*, 157 S.W.3d at 816; *Hoffman-La Roche*, 144 S.W.3d at 447. If there is an independent set of facts that would support a claim for intentional infliction of emotional distress, then the claim is not barred. *See Hoffman-La Roche*, 144 S.W.3d at 450. On the other hand, if plaintiff's intentional infliction of emotional distress claim is based on another tort, she cannot maintain an action for intentional infliction of emotional distress regardless of whether she chooses to assert the alternative claim, succeeds on the alternative claim, or the alternative claim is barred. *See id.* at 447-48. As to this rule, because Defendants did not raise this argument for dismissal until they filed their reply, the Court will not consider the argument. *See Xtria LLC v. Tracking Sys., Inc.*, No. 3:07-cv-160-D, 2007 WL 2719884, at *4 (N.D. Tex. Sept. 18, 2007).

And the Court concludes that, even leaving aside this "gap-filler"-tort consideration, Plaintiff's IIED claim does not state a claim to relief that is plausible on its face. The facts that Plaintiff alleges, accepted as true and taken in the light most favorable to her, do not as a matter of law rise to the level of extreme or outrageous conduct. Plaintiff has only alleged Marin's being rude toward her or "barraging" her with insults, indignities, or even threats, all of which do not support an IIED claim under Texas law.

And the further allegations that Marin engaged in this insulting or rude conduct in a manner calculated to goad Plaintiff into displaying her middle finger in his direction so that he could photograph her doing so and then seek to get Plaintiff fired from her job also does not rise to the level of extreme or outrageous conduct under Texas law. "[A]lthough a defendant's motive or intent is relevant to an intentional infliction of emotional distress claim, it is not enough to support liability," and, "[r]ather, the conduct itself must be extreme and outrageous." *Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 612 (Tex. 2002) (internal quotation marks omitted). "Indeed, even the fact of wrongful termination is legally insufficient to meet the [IIED] standard." *Porter v. Sw. Christian College*, 428 S.W.3d 377, 384 (Tex. App. – Dallas 2014, no pet.). As Defendants argue, in light of the types of conduct that Texas courts have previously held do not as a matter of law rise to the level of extreme or outrageous conduct to support an IIED claim, regardless of Marin's alleged intent and of any alleged injury caused to Plaintiff, Marin's shouting vile, foul, and misogynistic profanities and insults at Plaintiff, causing her to display her middle finger to Marin,

and then sharing a photograph of Plaintiff's doing so with her employer does not rise to the level of conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

The Court therefore grants Defendants' motion as to this claim and dismisses Plaintiff's IIED claim with prejudice.

<u>Negligence</u>

In support of the claim for negligence against Marin, Plaintiff alleges that Marin "had a legal duty to exercise the degree of care that a reasonably careful person would use to avoid harm to others under circumstances similar to those described" in her Original Petition and that "[t]he negligent, careless and reckless disregard of said duty by [Marin] consisted of, but is not limited to, the following acts and omissions, all of which constitute a breach of said legal duty to Plaintiff: A. In that [Marin] unleashed an unwarranted barrage of foul, vile, profane and misogynistic insults at Plaintiff. B. In that [Marin] committed an assault and battery on Plaintiff. C. In that [Marin] defamed Plaintiff. D. In that [Marin] intentionally sought to get Plaintiff terminated from her employment without good grounds therefor. E. In that [Marin] invaded Plaintiffs privacy. F. In that [Marin] intentionally inflicted emotional distress on Plaintiff. G. In all other acts of negligence to be proven at the trial of this matter." Dkt. No. 1 at 15 of 55.

Defendants move to dismiss this claim, asserting that "Plaintiff alleges that she suffered emotional distress and mental anguish from a verbal confrontation with"

Marin; that "[t]he Texas Supreme Court has held that 'there is no general duty in Texas not to negligently inflict emotional distress. A claimant may recover mental anguish damages only in connection with defendant's breach of some other legal duty'"; that "Plaintiff has not identified any other legal duty and none exists between two strangers engaged in an alleged verbal confrontation"; and that "Plaintiff's negligence claim, therefore, must be dismissed." Dkt. No. 4-1 at 5 (citing *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993)).

In response, Plaintiff contends that "Defendants' attempt to defeat Plaintiffs negligence claim by ignoring Plaintiff's pleading and shoe horning an unpled claim for negligent infliction of emotional distress is without avail," where "[a] negligence cause of action has three elements: (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by the breach" and "[t]he threshold inquiry in a negligence case is duty." Dkt. No. 6 at 4-5 (citing *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Mathis v. RKL Design/Build*, 189 S.W.3d 839, 844 (Tex. App. – Houston [1st Dist.] 2006, no pet.). Plaintiff explains that, in her Original Petition, she "alleged that [Marin] owed her a legal duty to exercise the degree of care that a reasonably careful person would use to avoid harm to others under similar circumstances, that [Marin] breached said duty in 7 specific particulars, and that she suffered damages as a result of said breach." *Id.* at 5 (citations omitted). Plaintiff asserts that she therefore sufficiently pleaded a claim for negligence and "did not state a claim for negligent intentional infliction of emotional distress." *Id.* at 5, 6.

Defendants reply that "Plaintiff's representation that her negligence action is not an action for negligent infliction of emotional distress is disingenuous," where "[i]t is undisputed that Plaintiff only alleges damages from allegedly being yelled at while at an arts festival," where "Plaintiff does not allege any physical damages" and "only alleges emotional distress and mental anguish damages" and "only seeks damages for infliction of emotional distress," and where "Plaintiff acknowledges that she is seeking emotional distress damages in her allegations for her IIED claim which is based on the same alleged facts and for the same alleged damages." Dkt. No. 7 at 1. According to Defendants, "[r]egardless of how artfully Plaintiff tries to plead her negligence action, it's still a claim for negligent infliction of emotional distress," "[a]nd that dog don't hunt in Texas." *Id.* at 1-2.

The Court agrees with Defendants that, as pleaded, Plaintiff's negligence claim could only be alleging negligent infliction of emotional distress insofar as she has pleaded, without more, that Marin breached his legal duty to exercise the degree of care that a reasonably careful person would use to avoid harm to others under similar circumstances when he "unleashed an unwarranted barrage of foul, vile, profane and misogynistic insults at Plaintiff" and when he "intentionally sought to get Plaintiff terminated from her employment without good grounds therefor." Dkt. No. 1 at 15 of 55. And, as Defendants note, there is no liability under Texas law for negligent infliction of emotional distress. *See Boyles*, 855 S.W.2d at 594.

Plaintiff's negligence claim, as pleaded, otherwise alternately pleads that Marin negligently engaged in intentional conduct or negligently committed intentional torts

or simply duplicates and re-labels a claim that is already alleged as another, more specific cause of action. Plaintiff pleads that Marin breached his legal duty to exercise the degree of care that a reasonably careful person would use to avoid harm to others under similar circumstances by "committ[ing] an assault and battery on Plaintiff," "intentionally [seeking] to get Plaintiff terminated from her employment without good grounds therefor," and "intentionally inflict[ing] emotional distress on Plaintiff." Dkt. No. 1 at 15 of 55. As a matter of law, Marin cannot be liable for negligently committing an intentional tort. Again, Texas law does not recognize a cause of action for negligent infliction of emotional distress, *see Boyles*, 855 S.W.2d at 594, and there is no such thing as a negligent assault or negligent battery, *see City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014); *Medrano v. City of Pearsall*, 989 S.W.2d 141, 144 n.2 (Tex. App. – San Antonio 1999, no pet.); *City of Waco v. Williams*, 209 S.W.3d 216, 224 (Tex. App. – Waco 2006, pet. denied). Plaintiff also pleads that Marin breached his legal duty to exercise the degree of care that a reasonably careful person would use to avoid harm to others under similar circumstances when he "defamed Plaintiff" and "invaded Plaintiffs privacy." Dkt. No. 1 at 15 of 55. But that amounts to simply re-labeling her defamation and invasion of privacy claims as negligence claims, which Texas courts do not permit. *See Klein & Assocs. Political Relations v. Port Arthur Indep. Sch. Dist.*, 92 S.W.3d 889, 898-99 (Tex. App. – Beaumont, 2002, pet. denied).

Plaintiff has not sufficiently pleaded factual content to allow the Court to draw a reasonable inference that Marin is liable for negligence. The Court grants Defendants' motion as to this claim, which – because it is not clear that Plaintiff cannot

possibly allege a facially plausible claim for negligence – is dismissed without prejudice to Plaintiff's repleading to allege sufficient factual content to support a negligence claim.

Assault and Battery

In support of the claim for assault and battery against Marin, Plaintiff alleges that Marin "spit on Plaintiff during the course of his unwarranted barrage of foul, vile, profane and misogynistic insults against Plaintiff"; that Marin "knew or should have reasonably believed that Plaintiff would regard his spitting on her as being offensive or provocative"; and that Marin therefore "committed an assault and battery when he spit on Plaintiff." Dkt. No. 1 at 16 of 55.

Defendants move to dismiss this claim, asserting that, "[t]o bring a claim for assault and battery offensive contact, a plaintiff must show that: (1) the defendant acted intentionally or knowingly; (2) the defendant made contact with the plaintiff's person; (3) the defendant knew or reasonably should have believed that the plaintiff would regard the contact as offensive or provocative; and (4) the defendant's contact caused injury to the plaintiff" and that "Plaintiff does not allege any bodily injury, so her assault and battery claim must be for offensive contact only." Dkt. No. 4-1 at 6 (citing *Foye v. Montes*, 9 S.W.3d 436, 441 (Tex. App. – Houston [14th Dist.] 1999, pet. denied)). Defendants contend that "Plaintiff failed to allege any facts showing that the alleged contact – spit – was intentional or done knowingly" and, "therefore, has failed to assert sufficient allegations to maintain a cause of action for assault and battery against Defendants." *Id.*

In response, Plaintiff explains that, "[i]n Texas, an assault and battery is both an offense against the peace and dignity of the State, as well as an invasion of private rights"; that, "[f]or that reason, the definition of assault and battery, whether in a criminal or civil trial, is the same"; and that, "[u]nder the Texas Penal Code, a person commits the offense of assault if the person 'intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." Dkt. No. 6 at 5 (internal quotation marks omitted; citing *Wal-Mart Stores, Inc., v. Odem*, 929 S.W.2d 513, 522 (Tex. App. – San Antonio 1996, writ denied); TEX. PEN. CODE ANN. § 22.0l(a)(3) (Vernon 1994)). "Plaintiff concedes she did not plead that Defendant Marin intentionally spit on her. Accordingly, Plaintiff is willing to provide a more definite statement of the basis of her claim for assault and battery." *Id.* at 6.

Based on Plaintiff's concession, the Court grants Defendants' motion as to this claim, which is dismissed without prejudice to Plaintiff's repleading to allege sufficient factual content to support an assault and battery claim.

## Conclusion

The Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss or, in the Alternative, Motion for More Definite Statement [Dkt. No. 4]. For the reasons and to the extent explained above, the Court dismisses with prejudice Plaintiff's claims against Marin for invasion of privacy and intentional infliction of emotional distress and – because they are derivative of Plaintiff's claims alleged against Marin – any corresponding allegations that Art by Ancizar is liable based on alter ego liability or

the doctrine of *respondeat superior* for Marin's alleged invasion of privacy tort and intentional infliction of emotional distress. For the reasons and to the extent explained above, the Court dismisses without prejudice Plaintiff's claims for defamation, negligence, and assault and battery against Marin and – because they are derivative of Plaintiff's claims alleged against Marin – any corresponding allegations that Art by Ancizar is liable based on alter ego liability or the doctrine of *respondeat superior* for Marin's alleged defamation, negligence, and assault and battery. Plaintiff must file an amended complaint, consistent with this opinion, by no later than **November 4, 2015**.

SO ORDERED.

DATED: October 14, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE