IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOY LYNN TIPPING,       §<br>§<br>   Plaintiff,          §<br>                          §<br>V.                        §<br>                          §<br>ANCIZAR MARTIN and ART BY §<br>ANCIZAR, INC.,            §<br>                          §<br>   Defendants.        § | No. 3:15-cv-2951-BN |

## **MEMORANDUM OPINION AND ORDER**

Defendants Ancizar Marin ("Marin") and Art by Ancizar, Inc. ("Art by Ancizar"; collectively, "Defendants") have filed a Motion to Dismiss Plaintiff's First Amended Complaint seeking dismissal of all of Plaintiff Joy Lynn Tipping's claims under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 21. Plaintiff has responded, *see* Dkt. No. 24, and Defendants have replied, *see* Dkt. 25.

For the reasons and to the extent explained below, the Court grants Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [Dkt. No. 21].

### **Background**

Defendants' motion to dismiss Plaintiff's Original Petition in this removed case was granted in part and denied in part. *See* Dkt. No. 19. The Court dismissed "with prejudice Plaintiff's claims against Marin for invasion of privacy and intentional infliction of emotional distress and – because they are derivative of Plaintiff's claims alleged against Marin – any corresponding allegations that Art by Ancizar is liable

based on alter ego liability or the doctrine of *respondeat superior* for Marin's alleged invasion of privacy tort and intentional infliction of emotional distress." *Id.* at 26. The Court dismissed "without prejudice Plaintiff's claims for defamation, negligence, and assault and battery against Marin and – because they are derivative of Plaintiff's claims alleged against Marin – any corresponding allegations that Art by Ancizar is liable based on alter ego liability or the doctrine of *respondeat superior* for Marin's alleged defamation, negligence, and assault and battery." *Id.* The Court also gave Plaintiff the opportunity to file an amended complaint. *Id.*

In her First Amended Complaint, Plaintiff alleges that, on April 5, 2015, she was attending the Deep Ellum Arts Festival (the "Festival") in Dallas, Texas and that, at that time, she "was employed as a journalist with the Dallas Morning News" but that she "was not 'on assignment' at the time of the events giving rise to" her claims in this case. Dkt. No. 20 at 3.

Plaintiff alleges that Marin and Art by Ancizar "contracted with the Festival for the exhibition of, among other artwork, sculpture pieces allegedly created by [Marin], described as '[c]ircus inspired fiberglass, volcano rock and bronze sculptures finished with automotive paints'" (the "sculpture pieces") and that "[t]he sculpture pieces were affixed to the outside of an exhibition tent assigned by the Festival to Defendants [Marin] and/or [Art by Ancizar] for exhibition to passersby." *Id.* at 3-4. Plaintiff alleges that "[m]any such tents were assigned to the various exhibitors at the Festival, allowing for passersby to move between the tents and view the various art works on display" and that, "[a]s with the tent assigned to Defendants, many tents assigned to

other exhibitors also had art work affixed to the outside of or displayed in front of such tents, in plain view of passersby." *Id.* at 4.

According to Plaintiff's First Amended Complaint, "[a]s Plaintiff was passing Defendants' tent, she took photographs of the sculpture pieces affixed to the outside thereof," and, "[i]mmediately after Plaintiff took the aforementioned photographs, [Marin] stormed out of his tent, stated that the sculpture pieces were protected by copyright and demanded that Plaintiff delete the photographs from her digital camera." *Id.* "Plaintiff responded to Defendant's demand by stating that she was a journalist and knew the copyright laws, refusing to delete the photographs from her camera and explaining that no copyright protection prevented passersby from photographing the sculpture pieces displayed in plain view." *Id.*

Plaintiff alleges that "[u]pon hearing that Plaintiff was a journalist, [Marin] 'got in Plaintiff's face' and began shouting that Plaintiff was not a journalist, demanding that she delete the photographs." *Id.* Plaintiff then showed Marin her Dallas Morning News identification badge, and Marin took a photo of it with his cell phone camera. *Id.* at 4-5.

Plaintiff alleges that Marin then "shouted that 'if' Plaintiff was a journalist, she was a 'whore, cunt journalist slut.'" *Id.* at 5. "[Marin's] statement that Plaintiff was a 'whore, cunt journalist slut' was heard by several bystanders," including one of the artists exhibiting art work at the Festival. *Id.* Plaintiff alleges that Marin "was in close proximity" to her during the confrontation, "spitting on [her] several times" and "placing [her] in apprehension that he was about to hit her." *Id.*

Plaintiff alleges "[Marin] then shouted that he was going to call the police, whereupon Plaintiff responded that she would save him the trouble and get one herself, walking away from [Marin] and the area" of the confrontation. *Id.* According to Plaintiff, "[a]s Plaintiff retreated, [Marin] continued shouting that Plaintiff was a 'whore, cunt, journalist slut'; whereupon Plaintiff displayed her middle finger to Defendant, who took a picture of same." *Id.*

Plaintiff alleges that when she returned with a Dallas policeman and Dallas County Constable to the scene of the confrontation, "[Marin] refused to calm down," and "the officers advised Plaintiff to vacate the area out of concern that [Marin] would become physically violent." *Id.*

According to Plaintiff, "[w]hen Plaintiff reported for work the next day at the Dallas Morning News, she was informed by her employer that [Marin] had called her place of employment complaining of her taking photographs of the sculpture pieces and that he had transmitted the picture of her displaying her middle finger." *Id.* "As a result of [Marin's] telephone call, Plaintiff was terminated from her employment." *Id.* at 6.

Plaintiff alleges claims against Marin for negligence, assault and battery, and defamation and alleges against Art by Ancizar alter ego liability – based on allegations that Art by Ancizar "was the alter ego of [Marin] at all material times" and "is jointly and severally liable with [Marin] for the acts and omissions complained of" – and liability under the doctrine of *respondeat superior* – based on allegations that, "[a]t all

material times, [Marin] was acting in his capacity as an employee of [Art by Ancizar]," which is therefore "liable for the acts and omissions of" Marin. *Id.* at 6-9.

Plaintiff asserts that she sustained economic and actual damages as a result of the actions and/or omissions of Defendants in the form of reasonable medical care and expenses in the past, incurred by Plaintiff for the necessary psychological care and treatment of the psychic injuries resulting from the occurrences complained of; mental anguish and suffering in the past; loss of earnings in the past; all costs of these proceedings; and interest as provided by law. *See id.* at 9. Plaintiff also requests an award of her attorneys' fees and alleges that the acts and omissions complained of were committed knowingly, intentionally, and with malice and that she is entitled to recover exemplary damages under Texas Civil Practice and Remedies Code § 41.003(a)(2). *See id.*

## Legal Standards

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). "The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim." *Hicks v. Green Tree Servicing*, LLC, 3:13-cv-3025-L, 2014 WL 961856, at *2 (N.D. Tex. Mar. 12, 2014) (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)).

To state a claim on which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

**Analysis**

Defendants move under Rule 12(b)(6) to dismiss Plaintiff's claims, asserting that the factual allegations in Plaintiff's First Amended Complaint "are still insufficient to support her claims. In fact, they conclusively show that she cannot maintain a claim for defamation, negligence, or assault and battery against Defendants." Dkt. No. 22 at 1.

<u>Defamation</u>

In support of the claim for defamation against Marin, Plaintiff alleges that Marin's statement "that 'if' Plaintiff 'was a journalist,' then she was a 'whore cunt journalist slut'" was one in which the words tended to damage Plaintiff's reputation as

a journalist by exposing her to public hatred, contempt, ridicule, or financial injury; that Marin had no legal excuse to make the statement; that the statement was made with negligence regarding the truth of the statement, resulting in harm to Plaintiff's reputation as a journalist, or, alternatively, that the statement "was made with actual malice regarding the truth of the statement, designed to goad Plaintiff into displaying her middle finger in order to get her fired from her employment"; and that the statement "was an oral defamation under Texas law." Dkt. No. 20 at 8.

The elements of a defamation claim are "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). The status of the person allegedly defamed determines the requisite degree of fault. A private individual need only prove negligence, whereas a public figure or official must prove actual malice. *See id.* (citing *WFAA-TV, Inc.*, 978 S.W.3d at 571). Neither Plaintiff nor Defendants contend that Plaintiff was a public figure.

Generally, there are two types of oral defamatory language: (1) that which is actionable in and of itself, without any allegations of special damage, and (2) that which is actionable only on allegations and proof of special damages. *See Padilla v. Carrier Air Conditioning*, 67 F. Supp. 2d 650, 663 (E.D. Tex. 1999). Even though language may tend to expose one to ridicule, hatred, or contempt, it is not actionable in and of itself unless it imputes to another the commission of a crime, has an injurious effect on one's office or business, or unless it falsely or maliciously imputes unchastity

to a female. *See id.*; *see also Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 310 (5th Cir. 1997) ("Because all words are not actionable, a plaintiff must prove either special damages (slander *per quod*) or that the words impute the commission of a crime, injure the plaintiff officially, professionally, or occupationally, or impute unchastity to a woman (slander *per se*).").

Defendants move to dismiss this claim, asserting that the alleged defamatory statement is a statement of opinion, not a statement of fact, and an expression of opinion is protected free speech. More specifically, Defendants argue that the alleged defamatory statement is an insult and that insults, casual remarks, and epithets – even if offensive – do not rise to the level of defamation.

Expressions of opinion may be derogatory and disparaging; nevertheless, they are protected by the First Amendment of the United States Constitution and Article I, Section 8 of the Texas Constitution. *See Getz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974); *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989). The question whether a statement is an assertion of fact or opinion is a question of law. *See Carr*, 776 S.W.2d at 570; *see also Ollman v. Evans*, 750 F.2d 970, 975 (D.C. Cir. 1984) (explaining that the United States Supreme Court's "implicit command" in *Gertz* "imposes upon both state and federal courts the duty as a matter of constitutional adjudication to distinguish facts from opinions in order to provide opinions with the requisite, absolute First Amendment protection").

"The statement must be construed as a whole, in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the

entire statement." *Carr*, 776 S.W.2d at 570. To evaluate the totality of the circumstances of an allegedly defamatory statement, the Court may consider four factors in assessing whether the average hearer would view the statement as fact or opinion. Those factors are (1) the common usage or meaning of the specific language of the challenged statement itself; (2) the statement's verifiability; (3) the full context of the statement; and (4) the broader context or setting in which the statement appears. *See Ollman*, 750 F.2d at 979; *see also Carr*, 776 S.W.2d at 570 (referencing *Ollman*'s four-factor test but not adopting or applying it because case decided on other grounds).

The common usage or meaning of the words "whore," "cunt," and "slut" may impute unchastity to a female, and the word "whore" also may impute the crime of prostitution, under certain circumstances. *See Rangel v. American Med. Response West*, No. 1:09-cv-01467-AWI-BAM, 2013 WL 1785911, at *9 (E.D. Cal. Apr. 25, 2013) ("While the term 'whore' may impute a want of chastity and thereby constitute defamation in certain contexts, in other contexts the term may be nothing more than 'the kind of imputes to another the commission of a crime rhetorical hyperbole, epithets and figurative statements that are nonactionable.'" (quoting *Ruiz v. Harbor View Cmty. Ass'n*, 134 Cal. App. 4th 1456, 1472, 37 Cal. Rptr. 3d 133 (2005)); *see, e.g.*, *Bryson v. News America Publ'ns, Inc.*, 672 N.E.2d 1207, 1212 (Ill. 1996) (magazine article referring to plaintiff as a "slut" and describing incident in which plaintiff was at a bonfire and drinking with "two guys nobody knew" implied that plaintiff was unchaste and held to be defamatory *per se*).

But the context in which the words were stated in this case – based on Plaintiff's own allegations, accepted as true and viewed in the light most favorable to Plaintiff – indicates that the words were not intended to be taken literally as statements of fact. And there are no allegations that Marin had any knowledge about Plaintiff before encountering her for the first time at the Festival, much less any knowledge concerning her personal life or the quality of her work as a journalist.

And Marin's statement that "if" Plaintiff was a journalist is a conditional statement that was not defamatory. According to Plaintiff, Marin did not state that Plaintiff was not a journalist, which would have been false, but merely questioned her journalistic credentials during a heated argument after she took photographs of his publicly-displayed artwork and refused to delete them from her camera. Marin followed Plaintiff uttering epithets not in order to goad her to display her middle finger in order to get her fired from her employment but to get her to delete the photographs. In Plaintiff's repleaded defamation claim, Plaintiff alleges that Marin not only questioned whether she was a journalist, but also stated that, if she was a journalist, the quality of her journalist was no better than that of a "whore, cunt and slut." *See* Dkt. No. 24. But, according to Plaintiff's allegations, Marin based his opinions concerning the quality of Plaintiff's work as a journalist solely on the incident at the Festival and not on any other facts known to him. *See* Dkt. No. 20.

Purely subjective assertions or opinions that do not imply the existence of undisclosed facts and do not misconstrue the facts are not actionable as defamation. *See Schmitz v. Cox*, No. 01-15-00199-CV, 2015 WL 6755427, at *4 (Tex. App. – Houston

-10-

[1st Dist.] Nov. 5, 2015, no pet.) (citing *Bentley v. Bunton*, 94 S.W.3d 561, 581-82 (Tex. 2002)). Instead, the vulgarisms used by Marin would not be understood, under the circumstances, by a person of ordinary intelligence to be meant literally but rather would be understood to be intended for vituperation – and "the law provides no redress for harsh name-calling." *Allen v. Echostar Comm'ns Corp.*, No. CV-04-0017-JLQ, 2005 WL 1123753, at *3 (E.D. Wash. May 11, 2005) (quoting *Flowers v. Carville*, 310 F.3d 1118, 1127 (9th Cir. 2002)); RESTATMENT (SECOND) OF TORTS § 574 cmt. e (1977) ("Words uttered face to face during an altercation may well be understood merely as abuse or insult....").

Plaintiff's defamation claim fails to state a claim to relief that is plausible on its face, and the Court therefore grants Defendants' motion as to this claim. And, because Plaintiff has been given an opportunity to replead this claim and has failed to state a claim, the Court dismisses Plaintiff's defamation claim with prejudice.

Negligence

In support of the claim for negligence against Marin, Plaintiff alleges that Marin "had a legal duty to exercise the degree of care that a reasonably careful person would use to avoid harm to others under circumstances similar to those described" in her First Amended Original Complaint and that "[t]he negligent, careless and reckless disregard of said duty by [Marin] consisted of, but is not limited to, the following acts and omissions, all of which constitute a breach of said legal duty to Plaintiff: A. In that [Marin] orally defamed Plaintiff. B. In all other acts of negligence to be proven at the trial of this Matter." Plaintiff also alleges that her "injuries were solely and

proximately caused by [Marin's] negligent, careless and reckless breach of said duty." Plaintiff Dkt. No. 20 at 5.

Defendants move to dismiss this claim, asserting that even as replead, Plaintiff's claim that Marin was negligent in his duty not to defame her is nothing more than a restatement of her defamation claim. As the Court previously explained, Texas courts do not permit simply re-labeling a defamation claim as a negligence claim. *See* Dkt. No. 19 at 23 (citing *Klein & Assocs. Political Relations v. Port Arthur Indep. Sch. Dist.*, 92 S.W.3d 889, 898-99 (Tex. App. – Beaumont, 2002, pet. denied)).

Plaintiff has not sufficiently pleaded factual content to allow the Court to draw a reasonable inference that Marin is liable for negligence, even after being given the opportunity to replead. Therefore, the Court grants Defendants' motion as to this claim and dismisses it with prejudice.

Assault and Battery

In support of the claim for assault and battery against Marin, Plaintiff alleges in her First Amended Complaint that "while calling Plaintiff a 'whore, cunt journalist slut,' [Marin] intentionally and knowingly moved very close to Plaintiff, violating her personal space by 'getting into her face'" and "[a]s a result of [Marin's] intentional and knowing violation of her personal space, Plaintiff was placed in apprehension that he would hit her." Plaintiff also alleges that during the confrontation, "[Marin] was in close enough physical proximity to Plaintiff to spit on Plaintiff during the course of his tirade" and that he spit on her several times. "As a result of [Marin's] intentional and knowing violation of Plaintiff's personal space, resulting in his spitting on Plaintiff,

[Marin] knew or should have reasonably believed that Plaintiff would regard his actions as being offensive or provocative," and his actions were "made with malice and with the intention to intimidate Plaintiff." According to Plaintiff, "[Marin] committed an assault and battery when he intentionally and knowingly violated Plaintiff's personal space, placing her in apprehension that he would hit her and spitting on her during the course of his tirade." Dkt. No. 20 at 7.

Defendants characterize Plaintiff's claim as a combination of assault and battery for offensive contact and threat of bodily injury.

Defendants assert that, "[t]o bring a claim for assault and battery for threat of bodily injury, a plaintiff must show that the defendant threatened the plaintiff with imminent bodily injury." Dkt. No. 22 at 4 (citing *LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 138 (Tex. App. – Amarillo 1997, writ denied)). Defendants also assert that words alone do not constitute an assault but, rather, there must also be some overt act in apparent execution of a threat. *See id.* (citing *LaBella*, 942 S.W.2d at 138; *Garrett v. State*, 619 S.W.2d 172, 175 (Tex. Crim. App. 1981); *Hare v. State*, 713 S.W.2d 396, 398 (Tex. App. – El Paso 1986, writ ref'd)). Defendants argue that Plaintiff does not allege that Marin made any sort of verbal threat to physically harm her but, instead, merely alleges that Marin "got in her face" during the verbal confrontation, which is insufficient to support a claim for assault and battery for threat of bodily injury. *Id.*

In response, Plaintiff argues that her apprehension of imminent physical harm was reasonable under the circumstances. *See* Dkt. No. 24 at 3 (citing *Olivas v. State*, 203 S.W.3d 341, 344 (Tex. Crim. App. 2006)). In *Olivares*, the issue was whether the

alleged victim must perceive the defendant's threat to establish the crime of assault by threat. And, while the Texas Court of Criminal Appeals was not required to resolve that issue, it clarified that regardless of the alleged victim's perception, "there must be *some* evidence of a threat being made to sustain a conviction of assault by threat." *Olivares*, 203 S.W.2d at 349 (construing *McGowan v. State*, 664 S.W.2d 355 (Tex. Crim. App. 1984)).

In this case, Plaintiff has not alleged facts to show that Marin threatened her with physical harm.

Defendants assert that, "[t]o bring a claim for assault and battery offensive contact, a plaintiff must show that: (1) the defendant acted intentionally or knowingly; (2) the defendant made contact with the plaintiff's person; (3) the defendant knew or reasonably should have believed that the plaintiff would regard the contact as offensive or provocative; and (4) the defendant's contact caused injury to the plaintiff." Dkt. No. 22 at 4-5 (citing *Foye v. Montes*, 9 S.W.3d 436, 441 (Tex. App. – Houston [14th Dist.] 1999, pet. denied)). Defendants contend that "Plaintiff failed to allege any facts showing that the alleged contact – spit – was intentional or done knowingly" and that Plaintiff "merely alleges that Defendant Marin was in close proximity to her during the alleged verbal confrontation and that — to borrow a concept from *Seinfeld* — he was a 'spitty talker.'" *Id.* at 5. Defendants assert that "Plaintiff's allegations show that any spit was accidental and merely a byproduct of Defendant Marin's speaking," which is insufficient to support a claim for assault and battery for offensive conduct. *Id.*

Plaintiff responds that "[w]hile [Marin] may not have intended to spit on Plaintiff the first time it occurred, he did nothing to prevent it happening multiple times, such as backing away when he realized he was spitting on Plaintiff." Dkt. No. 24 at 4.

But Plaintiff failed to allege any fact to show that Defendant intentionally or knowingly spit on Plaintiff.

Plaintiff has not sufficiently pleaded factual content to allow the Court to draw a reasonable inference that Marin is liable for assault and battery, even after being given the opportunity to replead. Therefore, the Court grants Defendants' motion as to this claim and dismisses it with prejudice.

## Conclusion

The Court GRANTS Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [Dkt. No. 21]. The Court dismisses with prejudice Plaintiff's claims against Marin for negligence, assault and battery, and defamation, and – because they are derivative of Plaintiff's claims alleged against Marin – any corresponding allegations that Art by Ancizar is liable based on alter ego liability or the doctrine of *respondeat superior* for Marin's alleged negligence, assault and battery, and defamation.

A judgment will be separately entered.

SO ORDERED.

DATED: February 2, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE